MICHAEL JAMES THOMPSON-ASHFORD,

          Plaintiff,

                                    Case No. 25-cv-397-pp

   v.

SHAWMUT SERVICES,

          Defendant.

## ORDER SCREENING AMENDED COMPLAINT (DKT. NO. 9) AND DISMISSING CASE

On March 14, 2025, the plaintiff, who is representing himself, filed a complaint alleging workplace discrimination based on his color, national origin, race, religion and sex, which he asserted had resulted in lost wages, pain and suffering. Dkt. No. 1 at 1, 7. With his complaint, the plaintiff filed a motion for leave to proceed without prepaying the filing fee. Dkt. No. 2. In the summer of 2025, the court granted the plaintiff's motion to proceed without prepaying the filing fee and partially screened his complaint. Dkt. No. 4. The court observed that the plaintiff had not attached a notice-of-right-to-sue letter from the United States Equal Employment Opportunity Commission or from the Wisconsin Equal Rights Division—a prerequisite to filing an employment discrimination suit. Id. at 6. The court administratively closed the case and told the plaintiff that he could move to reopen it and file a notice of right to sue letter with his motion. Id.

1

The plaintiff first filed a motion to reopen but did not attach a right-to-sue letter. Dkt. No. 5. The court advised him that the document he'd attached was his EEOC/ERD charge, not a notice-of-right-to-sue letter, and denied the motion to reopen without prejudice. Dkt. No. 6. In August 2025, the court received from the plaintiff another motion to reopen, this time with an EEOC notice-of-right-to-sue letter incorporated into it. Dkt. No. 7. In November, the court granted that second motion to reopen and fully screened the plaintiff's original complaint. Dkt. No. 8 at 2. The court found that the complaint did not state an employment discrimination claim because although the plaintiff "alleged that he was not treated well by his co-workers, [he] alleged no facts creating a plausible inference that that treatment, or his termination, were related to his race, skin color, gender, nationality or religion." Id. at 5. The court gave the plaintiff an opportunity to amend, explaining that he must allege facts sufficient to allow the court to answer the following questions:

> 1) Who violated his constitutional rights?; 2) What did each person do to violate his rights?; 3) Where did each person violate his rights?; 4) When did each person violate his rights?; and 5) Why does he think that the person(s) or company acted based on his protected characteristics, and not for some other reason?

Id. at 5–6. In December 2025, the plaintiff submitted his amended complaint. Dkt. No. 9. this order screens that complaint.

## I.   Screening

### A.   Legal Standard

The court now must decide whether the amended complaint raises claims that are legally "frivolous or malicious," that fail "to state a claim upon

which relief may be granted" or that seek "monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A(b). A court must liberally construe a complaint filed by a self-represented litigant and, "however inartfully pleaded," that complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007). But the court is "not charged with seeking out legal 'issues lurking within the confines' of the [self-represented] litigant's pleadings, and the court's duties certainly do 'not extend so far as to require the court to bring to the attention of the pro se litigant or to decide the unraised issues.'" Kiebala v. Boris, 928 F.3d 680, 684–85 (7th Cir. 2019) (quoting Caruth v. Pinkney, 683 F.2d 1044, 1050 (7th Cir. 1982)).

Although courts liberally construe their filings, self-represented litigants must comply with Federal Rule of Civil Procedure 8(a)(2), which requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." A plaintiff need not plead every fact supporting his claims; he need only to give the defendant fair notice of the claims and the grounds upon which they rest. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). To state viable claims against the defendant, the complaint must contain allegations that "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Legal conclusions and conclusory allegations

3

merely reciting the elements of the claim are not entitled to this presumption of truth. Id. at 663-64.

Federal law prohibits employers from discriminating against an individual because of that individual's race, color, religion, sex, national origin or age. 42 U.S.C. §2000e-2(a); see also 29 U.S.C. §623(a). To successfully state a claim of employment discrimination, the plaintiff must "allege enough facts to allow for a plausible inference that the adverse action was connected to her protected characteristics." Kaminski v. Elite Staffing, Inc., 23 F.4th 774, 777 (7th Cir. 2022). Federal law also prohibits retaliation; Title VII prohibits an employer from retaliating against an employee "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." Igasaki v. Ill. Dep't of Fin. & Pro. Regul., 988 F.3d 948, 959 (7th Cir. 2021) (quoting 42 U.S.C. §2000e-3(a)). To state a retaliation claim, the plaintiff must allege that "(1) he engaged in an activity protected by the statute; (2) he suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action." Lewis v. Wilkie, 909 F.3d 858, 866 (7th Cir. 2018).

B.    Facts Alleged in the Amended Complaint (Dkt. No. 9)

The plaintiff used this district's amended complaint form for non-prisoner filers without lawyers and, as the court has explained, attached a notice of right to sue letter from the EEOC. Dkt. No. 9.

The plaintiff alleges that he is a Black male. Dkt. No. 9 at 3. He asserts that he was employed for a "short time" with the defendant and describes

4

himself as a "QC associate." Id. He does not describe the race or ethnicity of any of the other people he mentions in the amended complaint. The plaintiff alleges that he faced harm/discrimination at the hands of his coworkers. Id. The plaintiff alleges he faced race, color, religion, sex ("including pregnancy, sexual orientation, gender identity"), and "creed/national origin" discrimination. Id.

The complaint details the plaintiff's interactions with his coworkers between March 17 and March 29, 2024. Id. at 4–7. The plaintiff has entries for most days of that period, describing the alleged discrimination he faced that day. Id. The plaintiff asserts that his coworkers consistently ignored him and isolated him, creating a hostile work environment. Id.

The plaintiff makes several allegations about marijuana use around the office. Id. The plaintiff contends that on March 19, 2024, the data director smoked marijuana in the office in front of everyone, and that when the plaintiff tried to report that fact to the program director, the program director refused to discuss it, creating a hostile work environment. Id. at 4. The plaintiff alleges that this "[l]ater result[ed] in unlawful retaliation for opposing workplace discrimination towards the complainant." Id. The plaintiff asserts that on March 21, 2024—a couple of days later—the program director told the plaintiff that the plaintiff smelled like marijuana, despite the plaintiff being the only one in the office who did not smoke marijuana. Id. The plaintiff asserts that he told the program director that everyone except him smoked marijuana and offered to give a urine sample, but that the program director said there was "no need."

5

Id. The plaintiff says that on March 22, he told the program director that he was concerned that the program director telling him he smelled like weed was a "red flag," given that all the other staff smoked marijuana; he also complained about the poor communication in the office. But the plaintiff says that the program director "waved this off with a hand gesture" and said they should get back to training. Id. at 5. The plaintiff mentions that on that same day—March 22—the other QC associate made some statements about not getting fired, while vaping. Id. The plaintiff asserts that during lunch on March 23, the regional organizer director called him and told him she was let go because a marijuana joint was found inside the van she was operating; the plaintiff says that she told him that the program and data directors planned to use "grey areas in the situation to associate [the plaintiff[ with this incident." Id. at 5–6.

The plaintiff makes multiple allegations that people in the office did not speak to him, or ignored him; he alleges that this happened on March 17, March 21, March 22, March 23, March 24 and March 26. The plaintiff says that on March 20, a co-worker said that he had been doing a good job and could run programs as a director, but no one present responded and this promoted a hostile workplace and discrimination against the plaintiff. Id. at 4. He alleges that on March 22, a coworker told him that other coworkers had formed an "inner circle," were "on funny business" with him and were planning to target him. Id. He alleges that on March 23, he arrived at the office (on time, as instructed) at 1:00 p.m. to discover that "the rest of the staff had been there all morning and had arranged the office to isolate [him] from the rest of the

6

staff." Id. at 5. He says that although the program director told him to keep coming in at 1:00 p.m., "[a]ll meetings" involving him were held in the morning, when he wasn't present. Id. He says that after his co-worker was let go for the marijuana joint in the van, the program director collaborated with everyone in the office except the plaintiff, "making it clear that [the plaintiff] would never be an option" for the van job; the plaintiff says the van job eventually went to a co-worker with many personal issues. Id. The plaintiff alleges that on March 26, he overheard the program director saying that "the program would move forward with 'terminations' and 'new hires[,]'" and that the program director was interviewing someone else to "replace [the plaintiff]." Id. at 6. He says he never received any corrective coaching about his work or his attendance. Id. at 7. The plaintiff asserts that on March 28, he noticed that someone had eaten breakfast at his work station and "purposefully" left all the garbage for the plaintiff to clean up; he says when he asked whose garbage it was, everyone kept their heads down and kept working. Id. According to the plaintiff, on March 29, the program director called the plaintiff to inform him that he had been let go and told the plaintiff that the program director knew the plaintiff had "had trouble being on time." Id. at 7.

The plaintiff makes several assertions about the law. Id. at 7–9. He contends that "Title VII of the Civil Rights Act of 1964 Protects employees from discrimination based on:" race, color, religion, sex "(including pregnancy, sexual orientation, gender identity)" and national origin. Id. at 7. The plaintiff also writes: "isolation fits If [sic] an employee is: Excluded from meetings[,] Cut

7

off from communication[,] Given the 'silent treatment' [and] Singled out for negative treatment because of a protected characteristic, this can be illegal discrimination." Id. at 8. He asserts that "[d]iscrimination does not require firing or demotion—isolation alone can qualify if it materially affects work conditions[.]" Id. The plaintiff describes what he says is the federal standard for hostile work environment: "Federal law prohibits a hostile work environment, which can include: Ongoing isolation[,] Deliberate refusal to communicate[,] Sabotage of work[,] Public humiliation [and] Unequal enforcement of rules[.]" Id. The plaintiff claims that "[e]ven if the original issue isn't clearly discrimination, Federal law always prohibits retaliation if an employee: Complains about discrimination or harassment[,] Files an internal complaint[,] Requests accommodations[,] Participates in an investigation[.]" Id. The plaintiff asserts that "[r]etaliation includes: Sudden isolation[,] Removal from meetings[,] Cutting off communication and Increased scrutiny or unfair discipline[.]" Id. He argues that "[r]etaliation protection applies even if the original complaint is later found unsubstantiated[.]" Id. The plaintiff asserts that "[f]ederal law recognizes that non-obvious actions can still be discriminatory if they materially harm the employee, such as: Withholding critical information[,] Assigning impossible tasks[,] Excluding from decision-making[,] Blocking access to supervisors or clients [and] Creating conditions designed to cause failure[.]" Id. at 9

The plaintiff seeks compensation for lost wages and for pain and suffering. Id. at 10.

C.    <u>Analysis</u>

Aside from the plaintiff's recitation of various discrimination and retaliation standards, the plaintiff's amended complaint essentially is identical to his original complaint. <u>Compare</u> Dkt. No. 1 <u>with</u> Dkt. No. 9. The factual allegations are the same, with a few modifications. The plaintiff's entry for March 19, 2024 includes the new allegation that the refusal by the program director to discuss the data director smoking marijuana resulted "in unlawful retaliation for opposing workplace discrimination towards the complainant[.]" Dkt. No. 9 at 4. Several times the plaintiff has replaced first-person pronouns with "the complainant" or other third-person pronouns. <u>Id.</u> at 5, 7. When describing an incident where the program director gave another employee the keys to a work van and not the plaintiff, "even though she had many personal issues that conflicted with her attendance at work including a child in the hospital[,]" the plaintiff included the new allegation that this was "clear discrimination against the complainant[.]" <u>Id.</u> at 6. The plaintiff also removed any reference to the race and gender of his coworkers, something he had described in his original complaint. <u>Compare</u> Dkt. No. 1 at 3 <u>with</u> Dkt. No. 9 at 3.

When it screened the original complaint, the court instructed the plaintiff that his amended complaint must answer the question, "Why does he think that the person(s) or company acted based on his protected characteristics, and not for some other reason?" Dkt. No. 8 at 6. The amended complaint does not answer this question. The same problems the court identified with the

9

plaintiff's original complaint persist in the amended complaint, which means that the amended complaint does not allege sufficient facts to state a discrimination claim under Title VII. See id. at 5. The words the court used in its order screening the original complaint also describe the amended complaint:

> [T]he complaint does not explain how the hostile work environment and the plaintiff's termination were related to his protected characteristics. . . . It is not enough for a plaintiff to allege that he was treated badly by people of a different race or color or gender—he must allege facts showing that that treatment was the *result* of his race or color or gender. The plaintiff has not alleged that any of his co-workers said anything about his race, color, gender, nationality or religion (or that they made disparaging comments generally about Black people or people with brown skin or men or Americans).

Id. And the plaintiff's recitation of the law—or his understanding of it, which is inaccurate in some cases—does not help answer the question. They are merely recitations of various elements of Title VII claims, without the necessary facts that would show that the plaintiff can prove those elements. The plaintiff has clearly alleged that the people at his job treated him badly, but he has not alleged any facts, at all, to show that the *reason* they treated him badly was because of his race, color, religion, gender, gender identity or national origin.

Although the plaintiff titles his allegations as a "Complaint of Discrimination," it appears that the plaintiff attempts to make a retaliation claim. The plaintiff alleges that he tried to report another employee to the program director for using marijuana in the office. Dkt. No. 9 at 4. He alleges that the program director refused to discuss it. Id. His amended complaint adds the following phrase: "Later resulting in unlawful retaliation for opposing

10

workplace discrimination towards the complainant." Id. This is the only allegation the plaintiff makes that could plausibly be about retaliation.

To state a retaliation claim, the plaintiff must allege that "(1) he engaged in an activity protected by the statute; (2) he suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action." Lewis, 909 F.3d at 866. The plaintiff has plausibly alleged that he suffered an adverse action—being fired from his job—but he has not alleged facts showing that he engaged in a protected activity, so he has not alleged a causal link between any protected activity and his firing. The court could infer that the plaintiff is alleging that his protected activity was attempting to report marijuana use to the program director. See Dkt. No. 9 at 4. But this would be a stretch; the plaintiff never alleges that he was fired because he reported others' marijuana use. Nor is it clear that this would be a protected activity. The plaintiff's sparse allegations do not support an inference that the defendant is liable for retaliation.

The core of the plaintiff's case is the allegation that the defendant, through its employees, discriminated against him because of his protected characteristics. The Seventh Circuit has explained, in the summary judgment context, that "[a]lthough there are many tests and rubrics for viewing discrimination claims, it is important to recall that, at the end of the day they are all merely convenient ways to organize our thoughts as we answer the only question that matters: when looking at the evidence as a whole, 'whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's

11

race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action.'" (quoting <u>Ortiz v. Werner Enters., Inc.</u>, 834 F.3d 760, 765 (7th Cir. 2016)). The plaintiff's allegations would not allow a reasonable factfinder to answer that question in the affirmative. He has not made allegations that plausibly show that the defendant discriminated against him for prohibited reasons.

The court already has given the plaintiff one opportunity to amend his complaint. The Seventh Circuit has instructed courts to give *pro se* plaintiffs one opportunity to amend their complaints. <u>Zimmerman v. Bornick</u>, 25 F.4th 491, 493–94 (7th Cir. 2022). The court gave the plaintiff that one opportunity to amend and provided him with specific instructions, but the amended complaint fails to state a claim upon which this federal court can grant relief. The court will not give the plaintiff a third opportunity. It will dismiss the case.

## II.  Conclusion

The court **ORDERS** that this case is **DISMISSED WITH PREJUDICE** because it does not state a claim upon which a federal court can grant relief. The clerk will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment. <u>See</u> Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day

12

deadline. <u>See</u> Fed. R. App. P. 4(a)(5)(A). If the plaintiff appeals, he should be aware that the appellate filing fee is $605. If the plaintiff seeks to proceed on appeal without prepaying the appellate filing fee, he must file a motion *in this court.* <u>See</u> Fed. R. App. P. 24(a)(1).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Rule 59(e) must be filed within 28 days of the entry of judgment. The court cannot extend this deadline. <u>See</u> Fed. R. Civ P. 6(b)(2). Any motion under Rule 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. <u>See</u> Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 10th day of July, 2026.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

13